# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

SAMUEL KORNHAUSER,
Plaintiff,

Case No. 1:17-cv-00719
Barrett, J.
Litkovitz, M.J.

vs.

NOTTING HILL, LLC,
Defendant.

**REPORT AND
RECOMMENDATION**

Plaintiff Samuel Kornhauser, proceeding pro se, brings this civil action against defendants Notting Hill, LLC, its unnamed members, and William Skillman, III (collectively, "Notting Hill"). This matter is before the Court on Notting Hill's motion to dismiss the complaint (Doc. 4), plaintiff's opposing memorandum and errata to the memorandum (Docs. 10, 11), and defendants' reply memorandum (Doc. 12).

## I. Background

Plaintiff's claims arise out of a real estate purchase agreement between plaintiff, a citizen of the State of California, and defendants. Plaintiff alleges that defendant Skillman is a citizen of Ohio; Notting Hill, LLC is a limited liability company organized under the laws of the State of Ohio which conducts business and has its principal place of business in Ohio; and the unnamed members of Notting Hill, LLC are citizens of Ohio. (Doc. 1 at 3). Plaintiff makes the following factual allegations in the complaint:

On or about August 9, 2016, Skillman made an unsolicited offer to plaintiff to buy a six-story building located at 607 Main Street, Cincinnati Ohio ("the Property") so that Skillman and "his group" could develop it. (*Id.*, ¶ 10). Between August 9 and September 20, 2016, Skillman

informed plaintiff that he and his group wanted to purchase the Property to develop it into residential condominiums and that they had a $3 million budget to develop the Property. (*Id.*, ¶ 11). Skillman informed plaintiff several times in telephone conversations between August 9 and October 10, 2016 that Skillman knew he and his group would have to gut the interior of the Property and address several fire suppression and building code violations; however, these were not problems because the improvements would be necessary as part of the proposed development and were included in the $3 million budget. (*Id.*, ¶ 12).

On October 6, 2016, plaintiff informed Skillman that the purchase was "as is where is" and made defendants aware of certain conditions regarding the Property. (*Id.*, ¶ 13). These included negotiations plaintiff had just completed with the City of Cincinnati and certain City departments for electrical and water system improvements. (*Id.*, ¶ 13). Skillman informed plaintiff that these required improvements were not an issue since he and his group knew of these and other alleged code violations and necessary improvements and had budgeted for them. (*Id.*).

On September 20 and October 6, 2016, defendants Skillman and Notting Hill, LLC entered into an Addendum and Contract to Purchase Commercial Industrial Investment ("Purchase Agreement") whereby Notting Hill would purchase the Property from Kornhauser in an "as is where is" for a price of $900,000 payable in cash at the closing, with $25,000 in earnest money to be deposited with a title agency.[1] (*Id.*, ¶¶ 14, 16, 17, 18). The deposit would be applied to the purchase price upon closing of the sale. (*Id.*, ¶ 17). Implicit in the Purchase Agreement was a covenant of good faith and fair dealing. (*Id.*, ¶ 24).

Several times during the 30-day inspection period, defendants received physical access to the Property. (*Id.*, ¶ 26). On November 4, 2016, defendants sent plaintiff an email requesting a

---

[1] *See Notting Hill, LLC v. Samuel Kornhauser*, No. 1:17-cv-00016, Doc. 3, Exh. 1.

30-day extension of the inspection period regarding issues previously disclosed by plaintiff. (*Id.*, ¶ 27). The next day, defendants sent plaintiff a "Notice of Termination of the Purchase Agreement."[2] (*Id.*, ¶ 29). Plaintiff alleges defendants requested the extension and terminated the Purchase Agreement in bad faith. (*Id.*, ¶¶ 28, 31).

Based on these allegations, plaintiff brings claims for (1) specific performance of the Purchase Agreement, which includes defendants' immediate payment of $900,000 cash plus an additional payment of $138,786 in construction costs that plaintiff has incurred to remediate code violations; (2) breach of contract, alleging damages in an amount equal to the difference between $1,038,786 (purchase price and expenses plaintiff incurred), less the value of the property on November 4, 2016, the date of defendants' breach, plus attorney fees and costs; (3) breach of implied covenant of good faith and fair dealing, for which plaintiff claims damages in excess of $1,038,786 and punitive damages; (4) fraud based on defendants' representations they would purchase the property "as is where is" for $900,000, resulting in damages in excess of $962,000; (5) negligent misrepresentation, for which plaintiff claims damages in excess of $1,038,786; (6) a declaratory judgment declaring that plaintiff fulfilled all of his obligations under the Purchase Agreement, defendants have breached the Purchase Agreement by failing to pay the agreed purchase price of $900,000, defendants are not entitled to recover the $25,000 earnest money deposit, and plaintiff is entitled to specific and complete performance of defendants' obligations under the Purchase Agreement and payment of $1,038,786 as necessary for performance of the contract and closing of the sale of the property; and (7) piercing the corporate veil of Notting Hill, LLC so that joint and several liability can be imposed for the corporation's allegedly unlawful actions. Plaintiff seeks to hold the members of Notting Hill, LLC jointly and severally

---

[2] *See Notting Hill, LLC*, No. 1:17-cv-00016, Doc. 3, Exh. 3.

3

liable for monetary damages of $1,038,786, prejudgment and post-judgment interest, reasonable attorney fees and costs under the parties' Purchase Agreement, and punitive damages.

Before Kornhauser filed this lawsuit, Notting Hill, LLC had filed a complaint for breach of contract in the Hamilton County, Ohio Court of Common Pleas against Kornhauser on December 9, 2016, arising out of the parties' Purchase Agreement. (Doc. 4; Exh. 1, *Notting Hill, LLC v. Samuel Kornhauser*, Case No. A1606763 (Ham. Cnty. Ct. C.P.). Notting Hill, LLC sought the return of the $25,000 earnest money deposit, prejudgment and post-judgment interest, attorney fees and costs, and a declaratory judgment under Ohio law interpreting the contract in Notting Hill, LLC's favor. (*Id.*). Kornhauser removed the case to this Court on January 9, 2017. (Doc. 4, Exh. 2, Case No. 1:17-cv-00016). On that same date, Kornhauser filed an answer and a counterclaim against Notting Hill (Skillman, Notting Hill, LLC, and the individual members of the company) for specific performance, breach of contract, breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, declaratory relief, and piercing the corporate veil to allow joint and several liability. *Notting Hill, LLC*, Case No. 1:17-cv-00016, Doc. 3. The district court *sua sponte* remanded the case to state court on September 25, 2017 because it found the amount in controversy requirement of 28 U.S.C. § 1332 was not met and the Court therefore lacked subject matter jurisdiction. (*Id.*, Doc. 22). In making its determination, the Court rejected Kornhauser's argument that his counterclaims created federal jurisdiction because he sought specific performance of a $900,000 real estate contract and his damages therefore exceeded $75,000.00. The Court found that Kornhauser's counterclaims were not properly considered in determining removal jurisdiction and the amount in controversy. The state court case remains pending in the Court of Common Pleas.

## II. Motion to Dismiss (Doc. 4)

Notting Hill moves to dismiss plaintiff Kornhauser's complaint on the ground the same action, which has already been remanded to the state court once by this District Court, is currently pending in the Hamilton County Court of Common Pleas. (Doc. 4). Notting Hill argues that both the state court action, which Notting Hill, LLC filed first, and this subsequently filed lawsuit involve the same real estate contract between the parties. Defendants argue that plaintiff is bound to bring any claims he has arising out of the parties' contract as compulsory counterclaims in the state court action. (*Id*. at 4, citing Fed. R. Civ. P. 13(a)). Defendants allege that by instead filing an entirely new lawsuit in federal court, plaintiff is improperly attempting to evade the state court's jurisdiction.

Plaintiff disagrees and argues that this Court has diversity jurisdiction over his claims against defendants because plaintiff is a resident of California and defendants are residents of Ohio, and the $960,000 in damages plaintiff claims exceeds the $75,000 amount in controversy requirement. (Doc. 10 at 2). Plaintiff contends that defendants do not dispute that this Court has subject matter jurisdiction over his lawsuit. Further, plaintiff argues that the pending state court litigation does not require dismissal of this federal lawsuit. (*Id*. at 4, citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)). Plaintiff alleges that defendants cite no legal authority to support their argument to the contrary, and applicable Supreme Court law actually holds that the pendency of a state court action is not a basis for dismissing a federal action that involves "the same matter as the federal case." (*Id*. at 4).

In reply, Notting Hill asserts that plaintiff's federal complaint is identical to the compulsory counterclaim that is pending in the state court lawsuit, as both involve the same parties, the same claims, and the same facts. (Doc. 12). Notting Hill argues that in view of these

5

circumstances, this Court should abstain from exercising its jurisdiction under the *Colorado River* doctrine and applicable Sixth Circuit case law. (*Id.* at 3-4, citing *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001)).

Notting Hill does not indicate which provision of Fed. R. Civ. P. 12 it brings its motion to dismiss under. Defendants' motion to dismiss does not challenge this Court's jurisdiction over the subject matter but instead asks the Court to abstain from deciding this case during the pendency of the parallel state court proceedings. The Court agrees with other federal district courts that have determined that a motion to dismiss on comity or abstention grounds is "sufficiently analogous" to a challenge to the court's subject matter jurisdiction to warrant review under Fed. R. Civ. P. 12(b)(1). *See McNulty v. Arctic Glacier, Inc.*, No. 08-CV-13178, 2016 WL 465490, at *11 (E.D. Mich. Feb. 8, 2016) (citing *In re Daewoo Motor Co. Ltd., Dealership Litig.*, No. MDL-1510, 2005 WL 8005218, at *3, n. 11-12 (M.D. Fla. Jan. 6, 2005)). In the *In re Daewoo Motor Co. Ltd., Dealership Litig.* decision, the district court found that by moving to dismiss the case on the ground of comity, defendants recognized that the court had jurisdiction over the subject matter but asked the court to choose, in its discretion, not to exercise its jurisdiction; in essence, the defendants asked the district court "to abstain from deciding the case." *Id.*, 2005 WL 8005218, at *3. The court concluded that because the issues raised by the motion to dismiss were "more closely related to a motion to dismiss on jurisdictional grounds than on Rule 12(b)(6) grounds," it was more appropriate to "utilize a Rule 12(b)(1) approach." *Id.* The court cited a number of decisions where district courts have "indicated that a motion to dismiss on comity and/or abstention grounds falls within the rubric of a Rule 12(b)(1) motion."

*Id.*, n. 11 (collecting cases). As in these prior cases, Notting Hill's motion to dismiss is properly analyzed under Fed. R. Civ. P. 12(b)(1).[3]

Defendants argue that the factors to be considered in determining whether to abstain from exercising jurisdiction weigh in their favor and that this Court should decline to exercise its jurisdiction while the identical state court claims are pending. (Doc. 12 at 9). Plaintiff counters that this Court has a "virtually unflagging obligation . . . to exercise the jurisdiction given" to it. (Doc. 10 at 2, citing *Colorado River*, 424 U.S. at 817). Plaintiff notes, but does not discuss the significance of the fact, that the state court case is "realistically no further along" than this case. (Doc. 11 at 2). Plaintiff does not attempt to apply the factors relevant to an abstention determination to these proceedings.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River,* 424 U.S. at 813. Under "exceptional" circumstances, "a federal district court may abstain from exercising its subject matter jurisdiction due to the existence of a concurrent state court proceeding, based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (quoting *Colorado River,* 424 U.S. at 817)).

A district court must consider eight factors when deciding whether to abstain from exercising its jurisdiction due to a state court's concurrent jurisdiction. These factors are: "(1)

---

[3] There are two types of challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1): a facial attack, under which all allegations of the complaint must be taken as true, and a factual attack, under which the court can weigh evidence to verify the existence of the factual bases for subject matter jurisdiction. *McNulty*, 2016 WL 465490, at *11. The Court in *McNulty* found that the motion before it did not neatly fit under either type of challenge but that the collateral attack was sufficiently "analogous to a factual attack on the Court's subject matter jurisdiction" to warrant review under the 12(b)(1) factual attack standard. *Id.* Here, it is not necessary to decide whether defendants' motion is more analogous to a facial or factual attack because the Court need not look beyond the state and federal court filings, of which the Court can take judicial notice, to resolve defendants' motion to dismiss. *Cf. Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (a court may take judicial notice of other court proceedings when ruling on a motion to dismiss under Rule 12(b)(6)).

whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction." *Id.* at 206. The court must carefully balance "the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 207 (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

The balance of factors weighs in favor of a finding that this Court should abstain from exercising jurisdiction over plaintiff's federal complaint. Only two of the eight factors weigh in favor of exercising jurisdiction. First, there is no dispute that the state court has not assumed jurisdiction over any res or property, a factor which supports exercising jurisdiction. *Id.* (citing *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998)). Second, the federal forum is not less convenient since both the state and federal courts are located in Cincinnati, which counsels against abstention. *See Romine*, 160 F.3d at 341 (the federal forum was not any less convenient than the state forum since both actions were pending in courthouses in the same city, so that this factor counseled against federal abstention).

The remaining factors strongly tilt the balance in favor of abstention. The third factor favors abstention because there is the strong potential for piecemeal litigation if this case proceeds in both the state and federal courts. *Id.* ("Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results.").

As to the fourth factor, "priority [in obtaining jurisdiction] should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *PaineWebber, Inc.*, 276 F.3d at 206 (finding "minimal temporal delay" of two days was insignificant and did not favor abstention) (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21) ("finding that a 19-day difference between the filings of the state court and federal court actions was immaterial given the absence of progress in the state court action and the substantial proceedings that had occurred in the federal court action"). Here, though, the temporal delay between the dates the state court and the federal court obtained jurisdiction over this matter is significant. Further, the progress that has been made in the two cases is of little consequence in light of the circumstances. Specifically, Notting Hill, LLC filed its state court complaint in December 2016 and plaintiff filed this federal action more than ten months later in October 2017. Little progress has occurred in either lawsuit due largely to plaintiff Kornhauser's attempt to remove the state action to federal court in January 2017 despite the absence of federal subject matter jurisdiction, the subsequent remand of the removed case to state court in September 2017, and plaintiff's filing of this virtually identical lawsuit in federal court.[4] To proceed with this lawsuit because of the lack of progress in the state court case would therefore improperly reward plaintiff for delaying resolution of the complaint Notting Hill, LLC initially brought against him in state court. The order in which jurisdiction was obtained weighs in favor of abstention under these circumstances.

The fifth and sixth factors favor abstention because the claims at issue are governed by state law and the state court action is adequate to protect Kornhauser's interests. The seventh factor to be considered, which is the relative progress of the state and federal cases, is of little

---

[4] According to the docket sheet for the state court case, no activity has taken place in that case since September 27, 2017. *Notting Hill, LLC v. Samuel Kornhauser*, No. A 1606763.

9

consequence for the reasons previously discussed. Finally, the eighth factor - the presence of concurrent jurisdiction - favors abstention here because state law governs the parties' claims and there is no expressed preference under the applicable law for federal litigation. *Cf. PaineWebber, Inc.*, 276 F.3d at 208 (the eighth factor was insufficient to justify abstention despite concurrent jurisdiction in state and federal courts where "a congressional act provide[d] the governing law and expresse[d] a preference for federal litigation") (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25, n. 32; *Romine*, 160 F.3d at 342).

Thus, the balance of the factors to be considered weighs heavily in favor of abstention. It is appropriate for the Court to exercise its discretion to abstain from exercising jurisdiction over plaintiff Kornhauser's federal complaint.

**IT IS THEREFORE RECOMMENDED THAT:**

Defendants' motion to dismiss (Doc. 4) be **GRANTED** under Fed. R. Civ. P. 12(b)(1) and this case be terminated on the Court's docket.

Date: 5/14/18

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SAMUEL KORNHAUSER,
Plaintiff,

Case No. 1:17-cv-00719
Barrett, J.
Litkovitz, M.J.

vs.

NOTTING HILL, LLC,
Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).